UNITED STATES of America, Plaintiff,

v.

Sherice Y. THOMPSON, Defendant.

No. 4:CR93–3035.

United States District Court,
D. Nebraska.

Nov. 20, 1995.

Sara E. Fullerton, Special Assistant United States Attorney, Lincoln, NE, for Plaintiff.

Miles W. Johnston, Jr., Lincoln, NE, David R. Stickman, Federal Public Defender, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter comes on for consideration on my initiative, without motion by either party.

Defendant Sherice Y. Thompson entered, and I accepted (Filing 472), a plea of guilty to a charge of possession with intent to distribute 50 grams or more of cocaine base (crack). Her guilty plea took place in the context of a multidefendant prosecution involving a "crack" cocaine conspiracy. In essence, the defendants were alleged to have transported "crack" from California for distribution in Nebraska.

I have read the presentence report (PSR) regarding Sherice Thompson. It is well done, and there are no objections. Yet I am troubled by the PSR, and I hereby give notice to the parties that I am considering a downward departure under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, p.s.

## I.

Sherice Y. Thompson (Thompson) is a 25–year–old black woman. (PSR ¶¶ 53, 61.) She is a high-school graduate, (*id.*, ¶ 65), and has no criminal history. (*Id.*, ¶ 50.)

At the request of a friend, Thompson delivered a package containing 249.16 grams of crack cocaine and a small quantity of marijuana to an air-delivery company at an airport in California. (*Id.*, ¶¶ 14–15, 17–18.) At first she assumed the package contained marijuana. (*Id.*, ¶ 17.) The man who gave her the package informed police that "he does not believe that he told her what was contained in the box." (*Id.*, ¶ 25.)[1] Thompson told the United States probation officer who prepared the PSR that "she became aware of the contents of the package she had mailed the next day." (*Id.*, ¶ 19.) At the time I accepted her plea, Thompson stated that when she mailed the package she knew there was "crack" cocaine in it. (Filing 472, Tr. 21:13–15.) Thompson took $10.00 for her trouble. (PSR ¶ 20.)

The PSR indicates that on at least one other occasion Thompson shipped a package containing half an ounce of marijuana from California to Nebraska. (*Id.*, ¶ 28.) Thomp-

son admitted in a secretly taped telephone conversation that "I have been doing this for them for a long time...." (*Id.*, ¶ 31.)

Using the 249.16 grams of "crack" in the package, the probation officer established Thompson's base offense level at 34 (at least 150 grams but less than 500 grams of cocaine base) pursuant to U.S.S.G. § 2D1.1(a)(3)(c)(3). (*Id.*, ¶ 38.) Pursuant to U.S.S.G. § 3B1.2(b), the officer then reduced Thompson's base offense level by 2 for her minor role in the offense. (*Id.*, ¶ 41.) The probation officer did not give Thompson a greater role adjustment because there was one defendant who mailed a package containing a smaller quantity of "crack" and who was less culpable than Thompson. (*Id.*) The probation officer also gave Thompson a 3–point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) & (b). (*Id.*, ¶ 44.)

Thompson's total offense level was 29, with a criminal history category of I. (*Id.*, ¶¶ 47, 50.) This resulted in a guideline range of 87 to 108 months. (*Id.*, ¶ 73.) Because of the statutory mandatory minimum, the guideline range would become 10 years (120 months). (*Id.*) However, because Thompson fits the criteria set forth in U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)(1)–(5), the so-called "safety-valve" exception, the probation officer indicates that I have the discretion to impose a sentence within the applicable guideline range without consideration of the statutory mandatory minimum. (*Id.*, ¶ 74.)

I find that Thompson is clearly entitled to the "safety-valve" exception. (I take this opportunity to invite the government to submit recommendations as provided by 18 U.S.C. § 3553(f).) Her custodial guideline range is 87 to 108 months' imprisonment unless I depart downward.

## II.

I am considering a downward departure pursuant to 18 U.S.C. § 3553(b) and U.S.S.G.

---

1. "The defendant need not know what the controlled substance is if he knows he has possession of some controlled substance." *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* at 371 (West 1994) (collecting cases). *See also United States v. Hakeem*

*Freeland Segon Funisho Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986) ("The 'knowingly' element of this offense refers to a general criminal intent, i.e., awareness that the substance possessed was a controlled substance of some kind.").

§ 5K2.0, p.s. In order to justify downward departure under these sections of the statutes and guidelines, there must be either a mitigating factor in degree or a mitigating factor in kind "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" which should result in a sentence different from that provided by the guidelines.

## A. Justification for Departure

██ I believe there are three related factors not adequately considered by the Sentencing Commission which justify a departure here.

First, a defendant who (a) "mails" a package containing "crack"; (b) receives $10.00 for her work; (c) qualifies for the "safety-valve" exception set forth in U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)(1)–(5); (d) qualifies for a role reduction for minor or minimal participation; and (e) has no criminal history is vastly less culpable than most other individuals who distribute "crack" or "powder" cocaine.

This first factor was not adequately taken into consideration by the Sentencing Commission at the time it promulgated the guidelines being applied to Thompson in this case. This is true partly because it is only a fluke that Thompson did not receive a 4–point role reduction because there was someone even less culpable involved in this case.

Ray L. Williams (Williams), who like Thompson had no criminal history, was given a 4–point role reduction because he only helped to "mail" a package containing about 27 grams of "crack." But for this quirk of fate, Thompson would have been entitled to a 4–point role reduction. (PSR ¶ 41 ("With relation to Ray Williams, she was more culpable than Williams as the amount of cocaine base in the package she sent was ... larger....").) Under these unusual circumstances, the probation officer refused to characterize Thompson's involvement as comparatively "minimal" under U.S.S.G. § 3B1.2(a). However, I believe many judges would characterize Thompson's involvement as minimal in comparison to Williams or anyone else. See U.S.S.G. § 3B1.2, comment. (n. 2).

Second, although Congress resoundingly rejected in October the Sentencing Commission's Amendment No. 5 (May 1, 1995) which would have treated "crack" exactly like powder cocaine, S. 1254, 104th Cong., 1st Sess. § 1 (1995), 141 Cong.Rec. S14782 (daily ed. Sept. 29, 1995), available at 1995 WL 573128, at 7–8, Congress also recognized at the same time "that the current 100–to–1 quantity ratio [between "crack" and "powder" cocaine] may not be the appropriate ratio." H.R.Rep. No. 272, 104th Cong., 1st Sess. (1995), available at 1995 WL 588686 (background and need for legislation).

In fact, Congress explicitly contemplated change. For example, the House Report states that "[t]he goal must ultimately be to ensure that the uniquely harmful nature of crack is reflected in sentencing policy and, at the same time, uphold basic principles of equity in the U.S.Code." Id. The Senate bill which became the law, and which rejected Amendment 5, contained an explicit demand that the Sentencing Commission make recommendations to Congress on the proper ratios and "propose revision of the drug quantity ratio of crack cocaine to powder cocaine." S. 1254, 104th Cong., 1st Sess. § 2(a)(2) (1995), 141 Cong. Rec. S14782 (daily ed. Sept. 29, 1995), available at 1995 WL 573128, at 8.

It is obvious that very recent congressional recognition of the need for revision of the 100–to–1 ratio means the ratio was not adequately taken into consideration by the Sentencing Commission at the time it promulgated the guidelines being applied to Thompson in this case. Indeed, the Sentencing Commission simply used the 100–to–1 ratio as a reference point for base offense level calculations in 1986 and 1987 without searching deliberation because Congress had used the ratio in certain statutes for the purpose of mandatory minimum sentences. See, e.g., United States v. McMurray, 833 F.Supp. 1454, 1466–67 (D.Neb.1993) (discussing the history of the "crack" guidelines compared to the "powder" guidelines), aff'd, 34 F.3d 1405 (8th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1164, 130 L.Ed.2d 1119 (1995).

Third, quite apart from the rejected Amendment 5, the Sentencing Commission

found in February, 1995, that "[w]hile some aspects of crack cocaine use and distribution suggest that a higher penalty for crack offenses compared to powder cocaine offenses is appropriate, the present 100–to–1 quantity ratio is too great." *Special Report to the Congress: Cocaine and Federal Sentencing Policy (as directed by section 280006 of Public Law 103–322),* at i (Feb. 1995) (Executive Summ.; Major Conclusion No. 2).[2] By the Commission's own admission, its February, 1995, finding conclusively demonstrates that the 100–to–1 ratio was not adequately considered by the Commission at the time it promulgated the guidelines being applied to Thompson in this case.

In summary, there are those in Congress who believe the guidelines for "crack" should be decreased to more closely (but not exactly) follow the guidelines for powder cocaine, and there are also those who believe the guidelines for powder cocaine should be increased to more closely approximate the guidelines for "crack." *Compare* remarks of Sen. Kennedy *with* remarks of Sen. Abraham. 141 Cong.Rec. S14780–81 (daily ed. Sept. 29, 1995), *available at* 1995 WL 573128, at 2–6. Obviously, I express no opinion on this subject.

However, no matter what view ultimately prevails, it is now beyond doubt that the 100–to–1 ratio creates unnecessary and unintended sentencing disparity *not contemplated by the Sentencing Commission.* For example, there is the very troubling problem of unintentional but nevertheless unwarranted disparity insofar as ethnic or racial minorities are concerned. *See, e.g., Special Report to the Congress: Cocaine and Federal Sentencing Policy (as directed by section 280006 of Public Law 103–322),* at 163 ("The 100–to–1 crack cocaine to powder cocaine quantity ratio is a primary cause of the growing disparity between sentences for Black and White

federal defendants.") Similar unwarranted sentencing disparities are created when assessing criminal culpability. *Id.* at 175 ("Both intra- and interstate crack dealers get average sentences *longer* than international powder cocaine traffickers." (emphasis in original)). Given congressional passage of section 2 of S. 1254 and the Sentencing Commission's special report to Congress, one can no longer fairly say that "these issues are for Congress and the Sentencing Commission, not the courts." *McMurray,* 833 F.Supp. at 1467. In 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, p.s., this court was authorized by Congress and the Sentencing Commission to depart in cases where, as here, it is evident from the minimal culpability of the defendant, the passage of section 2 of S. 1254, and the Sentencing Commission's special report that the otherwise applicable sentence is driven by inadequate Sentencing Commission consideration.

Therefore, considering the acknowledged disparity between sentences for "crack" and "powder" cocaine and the fact that Thompson is substantially less culpable than most individuals charged with "crack" or "powder" cocaine offenses, I propose to depart downward.[3]

## B. Extent of Departure

■ Even though Congress has called for "revision of the drug quantity ratio of crack cocaine to powder cocaine," S. 1254, 104th Cong., 1st Sess. § 2(a)(2) (1995), 141 Cong. Rec. S14782 (daily ed. Sept. 29, 1995), *available at* 1995 WL 573128, at 8, Congress has also stated without equivocation that "crack" should not be equalized with powder cocaine for sentencing purposes. S. 1254, 104th Cong., 1st Sess. § 2(a)(1)(A) (1995), 141 Cong.Rec. S14782 (daily ed. Sept. 29, 1995), *available at* 1995 WL 573128, at 8 ("[T]he sentence imposed for trafficking in a quantity

---

**2.** This extensive document is 198 pages in length and constitutes a serious and deliberate examination of the 100–to–1 ratio and other issues. It was prepared at the direction of Congress in the Omnibus Violent Crime Control and Law Enforcement Act of 1994. I take judicial notice of the entirety of this document for purposes of evidence, including the factual findings stated therein. *See, e.g.,* Fed.R.Evid. 803(8)(A)-(C) (public records and reports of public bodies,

including factual findings, are admissible against government in criminal case when the findings are made pursuant to authority granted by law).

**3.** I do not decide whether a departure would be justified based on the passage of S. 1254 and the issuance of the Sentencing Commission's special report where a defendant was *not* substantially less culpable than other defendants.

of crack cocaine should generally exceed the sentence imposed for trafficking in a like quantity of powder cocaine."). Thus, in fashioning a departure in this case, I should and will choose a departure that takes into consideration the expressed intention of Congress.

I intend to depart downward to a total offense level of 21 and a criminal history category of I. This departure would result in a guideline custodial range of 37–46 months. U.S.S.G. (sentencing tbl.). I arrived at this range in the following manner.

First, I calculated the difference between a base offense level of 34 using 249.16 grams of "crack" and a base offense level treating the "crack" as powder. *Compare* U.S.S.G. § 2D1.1(c)(3) (level 34) *with* U.S.S.G. § 2D1.1(c)(10) (level 20). The difference is 14 levels and is, of course, based upon the 100–to–1 ratio. I divided this difference by 2 to account for the congressional finding that "crack" is more harmful than "powder" cocaine, for congressional recognition that the 100–to–1 ratio requires "revision," and for the Sentencing Commission's finding that the 100–to–1 ratio is "too great." I then enhanced the base offense level for powder cocaine by 7 levels, which provides a base offense level of 27 rather than 34.[4]

Second, I adjusted the base offense level downward by 3 rather than 2 points to account for Thompson's relatively minimal role in the offense. U.S.S.G. § 3B1.2. This maintains a 1–point spread between Thompson and the relatively less culpable Williams and is consistent with the last sentence of U.S.S.G. § 3B1.2. *Id.* ("In cases falling between (a) and (b), decrease by 3 levels.").[5]

Third, I gave Thompson the acceptance-of-responsibility reduction of 3 points proposed by the probation officer. (PSR ¶ 44.) *See* U.S.S.G. § 3E1.1(a) & (b).

Accordingly,

IT IS ORDERED that:

(1) The court herewith gives notice of its intention to apply 18 U.S.C. § 3553(f)(1)–(5) and U.S.S.G. § 5C1.2, the so-called "safety-valve" exception;

(2) The court herewith gives notice of its intention to depart downward pursuant to 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, p.s.;

(3) The court invites all parties who wish to object to such a departure or who wish to object to, or make recommendations regarding, application of the "safety-valve" exception to submit such objection or recommendation, with supporting brief, no later than December 11, 1995;

(4) The Clerk of the United States District Court for the District of Nebraska shall take care to mail copies of this memorandum and order to all counsel of record in this case (including the newly appointed federal public defender) and the United States probation officer.

---

**4.** In effect I have "averaged" the position of the senator who was the principal sponsor of section 1 of S. 1254 with the position of the senator who was the principal sponsor of section 2 of S. 1254. *Compare* remarks of Sen. Abraham (sponsor of § 1) *with* remarks of Sen. Kennedy (sponsor of § 2). 141 Cong.Rec. S14780–81 (daily ed. Sept. 29, 1995), *available at* 1995 WL 573128, at 2–6.

**5.** This is the same role reduction LaShonda R. Robinson received for using a telephone to try to

locate the drugs that were in the package "mailed" by Thompson. (LaShonda R. Robinson PSR ¶¶ 15, 47.) The proposed departure will also put Thompson in approximately the same custodial range as Lashonda R. Robinson, who was charged with a "telephone count." (*Id.,* ¶ 82 (48 months pursuant to U.S.S.G. § 5G1.1(a)).) Whereas Thompson has no criminal history points, LaShonda R. Robinson has 1 criminal history point. (*Id.,* ¶ 55.)